UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| JAYNA CARTER, | Case No. 3:11-CV-0662-VPC |
| Plaintiff, | ORDER |
| v. | |
| OTIS ELEVATOR COMPANY, et al., | |
| Defendants. | |

Before the court is the motion of defendant, Otis Elevator Company ("Otis"), to show cause why Stephen Carr ("Dr. Carr") should not be held in contempt of court (#52). On February 4, 2014, this court issued an order and concluded that the alleged misconduct of Dr. Carr does not warrant criminal contempt and construed the motion for order to show cause as a motion under LR IA 4-1 (#80). The also court set a briefing schedule for the parties to file supplemental points and authorities, and Dr. Carr opposed (#81) and Otis replied (#s 82 & 83). This order follows.

**I.    History and Procedure**

The underlying action in this case is for personal injury damages that plaintiff, Jayna Carter ("plaintiff") alleges she sustained while a guest at Circus Circus Hotel in January 2010 (#1). Plaintiff alleges that while riding in the hotel elevator, it came to an abrupt halt, and she remained in the elevator for about thirty minutes before being evacuated. Plaintiff sued the hotel and Otis for negligence and related claims as a result of this incident.

Plaintiff's counsel retained Dr. Carr as an expert witness concerning the elevator incident. The parties entered into a stipulated confidentiality agreement, which the court approved (#25).

The confidentiality agreement acknowledged that expert witnesses for the parties would likely be required to review confidential documents, and there are two specific provisions relevant here:

> 7. **Each expert, agent, consultant, or other representative who is permitted by any attorney for the parties to view, examine, scan or otherwise inspect the documents subject to this confidentiality agreement shall agree in writing to be bound by this agreement. A copy of this confidentiality agreement shall also be delivered to each of the above-listed persons by the attorneys for the parties.**
>
> 9. All documents produced subject to this confidentiality agreement, and any copies, lists or summaries thereof, shall be returned within thirty days after trial and/or other final resolution of the above-entitled action to the party who produced the documents, unless such documents or other items cannot be returned as a result of the party's introduction of such documents or items as evidence at trial, or unless such documents or items are otherwise unavailable for return.

(#25) (emphasis in the original).

On December 19, 2012, Dr. Carr received confidential documents from Otis, and he signed an affidavit by which he agreed to be bound by the terms of the parties' confidentiality order. Dr. Carr attested that "upon the resolution of this case, I herewith agree to return to Joseph Benson, Esq. copies of all confidential documentation previously provided including any copies, list, or summaries thereof. I specifically agree not to shred and/or dispose of any such confidential documents" (#53-2, Ex. 2; Aff. of Dr. Carr).

The parties successfully settled the case on April 24, 2013, and the court ordered that the confidential materials exchanged be returned to Otis's counsel not later than May 24, 2013 (#53, Hamilton Aff., para 6). Dr. Carr then sent a letter to Mr. Benson and Otis's counsel, Mr. Hamilton, dated May 6, 2012, in which Dr. Carr enclosed a REM printout from the case, as well as his affirmation that he kept no copies (#53-3, Ex. 3). Mr. Hamilton then wrote to Mr. Benson and acknowledged receipt of copies of the REM data, but also requested the return of other

confidential data identified in the letter (#53-3. Ex. 4).[1]  In response, Dr. Carr sent the following email to all counsel on May 18, 2013:

> On 3 May 2013 I mailed the only physical copy of the REM data that I had been given along with a statement affirming that I had kept no copies. A copy of this statement is attached.
>
> There were no other materials worthy of anything more than a trip to the trash can and everything else was discarded weeks ago.

(#53-5, Ex. 5).

Dr. Carr was also retained as an expert witness against Otis in a 2011 state court case filed in Washoe County District Court, *Joseph and Rosemary Bria v. Zante, Inc. dba Sands Regency Hotel Casino; Herbst Gaming, Inc., and Otis Elevator Co.*, Case No. CV11-00800 (#53, para. 10).[2]  Mr. Hamilton also served as counsel for Otis in the state court action, and the state court approved the identical confidentiality agreement, which required expert witnesses to return confidential documents within thirty days of resolution of the case (#53-6, Ex. 6).  Dr. Carr did not abide by the confidentiality agreement and instead signed an affidavit re: disposal of confidential information and attested as follows:

> 4. That on or about August 20, 2012, I was informed that this matter had been resolved and the confidential information previously provided would not be needed for further use; and thereupon, I shredded and/or disposed of all said confidential documents and any copies, lists or summaries thereof.

(#53-7, Ex. 7).  There is no information on this record whether Otis objected to Dr. Carr's conduct in the *Bria* case.

---

[1] In a later reply filed the court, Otis offered clarifications about the documents given to Dr. Carr and the documents he purportedly returned (#s 82 & 83).  In the reply, Otis provided a list of documents that it produced during discovery (#83 at 2).  Certain of these documents were not deemed confidential, and Otis clarified that Dr. Carr was not obligated to return these documents, which may not even have been provided to him by plaintiff's counsel, Mr. Benson.  *Id.*  However, Otis also noted that Mr. Hamilton's May 9, 2013 letter to Mr. Benson contained an error. Mr. Hamilton wrote that he had received copies of REM data from Dr. Carr (OTC000345-000381).  However, in reviewing Dr. Carr's earlier May 6, 2013, letter to counsel, what Dr. Carr referred to as the "REM printout" was only two pages, OTC000347-000346), leaving thirty-eight pages (OTC000347-000385) unaccounted for and presumably discarded in the trash. *Id.*

[2] This court takes judicial notice of this order pursuant to Fed.R.Evid. 201(b).

Otis brought this motion for order to show cause on the grounds that Dr. Carr violated the specific provisions of the confidentiality agreement in this case by improperly disposing of confidential documents in May 2013, and that his prior violation of an identical confidentiality agreement in the Bria case in October 2012, only seven months earlier, demonstrates Dr. Carr's willful disobedience of court orders.

As already noted, this court issued a recent order on February 4, 2013, and it declined to proceed with a criminal contempt against Dr. Carr, which could result in a fine and/or imprisonment. Instead, the court construed Otis's motion for order to show cause as one under Local Rule IA 4-1 and allowed Dr. Carr and Otis to file supplemental points and authorities (#80).

Dr. Carr opposes the imposition of sanctions for his conduct in this case and offers the following in his affidavit:

- Dr. Carr is an engineering expert who investigates Vertical Transportation accidents on behalf of victims of defective equipment.

- Dr. Carr has investigated more than 410 elevator and escalator accidents over the past decade in forty-five states.

- Dr. Carr believes there are fewer than five people in the entire nation who will work on behalf of plaintiffs as an elevator engineering expert against large companies such as Otis.

- Dr. Carr has served as an expert witness against Otis in over 100 cases, and in "virtually every case Otis requested such confidential documents be returned or destroyed."

- Dr. Carr "overlooked a small change of two words in a (sic) order I believed I had seen a hundred times before."

- Dr. Carr believed the order contained that same language he has come to expect from Otis, and in this instance, he missed the change.

- Both before and after the instant Carter case, "Otis has always handled the return of litigation discovery in a certain way which matches that of the industry as a whole. Essentially, expert

4

> witnesses agree to stipulations by which documents provided will either be returned or destroyed at the conclusion of the litigation."
>
> - Not one of the documents destroyed in this matter is anything other than a maintenance record.
>
> - Since the Carter case, Dr. Carr has been retained as an expert witness against Otis in six new cases and in each, the confidentiality order requires either the return or destruction of confidential documents.
>
> - Dr. Carr identified by Bates numbers those documents Mr. Benson provided him in the Carter case.
>
> - Dr. Carr attests that it was not his intention to violate an order of this court, nor is this a case willful disobedience; it was merely a mistake.

(#81, Ex. A; Carr Aff.).

In reply, Otis contends that Dr. Carr trivializes his admitted violation of this court's order. Dr. Carr attests that before and since this action, he has been retained as an expert witness in cases involving Otis, which contain the "return-or-destroy" language, but he provides no evidence of these other orders besides the statement in his affidavit. Notwithstanding what other confidentiality orders may or may not include, it is undisputed that the order in this case gave Dr. Carr one option: to return confidential documents at the conclusion of the case. Dr. Carr even acknowledged this obligation a second time when he expressly acknowledged his obligation in this case to return all documents he received from plaintiff's counsel:

> That upon resolution of this case, I herewith agree to *return* to Joseph Benson, Esq. copies of all confidential documentation previously provided including any copies, list of summaries thereof. I specifically agree not to shred and/or dispose of any such confidential documents.

(#53, Ex. 2, Affidavit of C. Stephen Carr, para. 4) (emphasis supplied).

Otis claims that Dr. Carr also minimizes the value of Otis's confidential documents, which Otis contends are not only extremely valuable, but their improper disclosure could result in irreparable harm to Otis. Finally, Dr. Carr's cavalier decision to simply place the documents

5

1 in the trash leaves Otis with no information whether the documents have been disposed of,
2 destroyed, or whether they still exist.

**II.     Discussion and Analysis**

Local Rule IA 4-1 provides as follows:

> The Court may, after notice and opportunity to be heard, impose any and all appropriate sanctions on an attorney or party appearing *in pro se* who, without just cause:
>
> (a) Fails to appear when required for pretrial conference, argument on motion, or trial;
>
> (b) Fails to prepare for a presentation to the Court;
>
> (c) Fails to comply with these Rules; or,
>
> (d) Fails to comply with any order of this Court.

As a preliminary matter, Dr. Carr first contends that this court lacks jurisdiction to impose sanctions under LR IA 1-4 because Dr. Carr is neither a party nor an attorney in this case. The court disagrees. The parties entered a protective order and Dr. Carr agreed to be bound by that order; therefore, a violation of that order is sanctionable. A district court possesses inherent power over the administration of its business, including the promulgation and enforcement of rules for the management of litigation. *Great-West Life & Annuity Ins. Co. v. American Economy Ins. Co.*, 2013 WL 5332410 (D. Nev. 2013) citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991); *Thomas v. Arn*, 474 U.S. 140, 146 (1985). Specifically, courts have inherent power to enforce their orders through civil contempt. *See Spallone v. United States*, 493 U.S. 265, 276 (1990) (citing *Shillitani v. United States*, 384 U.S. 364, 370 (1966)); *General Ins. Co. v. Eastern Consol. Util., Inc.*, 126 F.3d 215 (3d Cir. 1997); Fed. R. Civ. P. 37(b). A district court has wide latitude in determining whether there has been a contemptuous defiance of one of its orders. *Stone v. City of San Francisco*, 968 F.2d 850, 856 (9th Cir.1992). Further, the court notes more generally that it has long been understood that "[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution," powers "which

1  cannot be dispensed with in a Court, because they are necessary to the exercise of all others."
2  *United States v. Hudson*, 11 U.S. 32, 34 (1812); *see also Anderson v. Dunn*, 19 U.S. 204, 227
3  (1821) ("courts of justice are universally acknowledged to be vested, by their very creation, with
4  power to impose silence, respect, and decorum, in their presence, and submission to their lawful
5  mandates").

6  Moreover, the stipulated confidentiality agreement and order that the parties entered into
7  in this case provides, first, that any expert who is permitted by any attorney for the parties to
8  view, etc., documents subject to the confidentiality agreement shall agree in writing to be bound
9  by the agreement, and second, that the confidentiality agreement "shall survive termination of
10 this action, and the Court shall retain jurisdiction to enforce or modify this agreement" (#25, ¶¶
11 7, 11).  Carr executed his affidavit and "agree[d] to be bound by the terms [of the confidentiality
12 agreement]" (#53, Ex. 2 ¶ 2).  The confidentiality agreement provides that all documents
13 produced pursuant to the agreement "shall be returned within thirty days after trial or other final
14 resolution of the action (#25 ¶ 9).  In Carr's affidavit, he stated that he agreed to return all
15 documents, and he "specifically agree[d] not to shred and/or dispose of any such confidential
16 documents" (#53 ¶¶ 2, 4).

17 The court now turns to Dr. Carr's conduct.  It is clear that Dr. Carr and Otis have a long-
18 standing relationship with Dr. Carr as an adverse expert witness, and Otis as the defendant in
19 over one hundred cases throughout the country.  There is some question about whether
20 confidentiality orders in Otis cases aside from the present case and *Bria* contain the "return-or-
21 destroy" language, but paramount to this motion is the court's consideration of provisions of the
22 confidentiality order *in this case*.  The confidentiality order clearly instructs expert witnesses to
23 return – not return or destroy – all confidential documents at the end of the case (#25).  Dr. Carr
24 also signed an affidavit in which he not only agreed to this procedure, but he also attested, "I
25 specifically agree not to shred and/or dispose of any such confidential documents" (#53-2, Ex. 2;
26 Carr Aff.).

7

In defense of his failure to comply with the confidentiality order, Dr. Carr explained at length in his affidavit why he mistakenly failed to comply with the confidentiality order (#81, Ex. 1; Carr Aff.). Having considered Dr. Carr's affidavit and the circumstances of this case, the court concludes that Dr. Carr did not deliberately violate the confidentiality order. However, what does concern the court is that for an experienced expert witness accustomed to reading court orders in hundreds of cases, Dr. Carr not only failed to read the confidentiality order carefully; he also signed an affidavit which specifically required him to acknowledge his obligation to return the documents. Then, when Dr. Carr was asked to locate the confidential documents and return them, his reply was dismissive and flippant: "There were no other materials worthy of anything more than a trip to the trash can and everything else was discarded weeks ago" (#53-5, Ex. 5).

Parties engaged in litigation must necessarily exchange confidential documents, but must rely on the parties' and expert witnesses' good faith, professionalism, and adherence to confidentiality orders. The court concludes that Dr. Carr's admitted failure to do so in this case warrants sanctions. Dr. Carr is admonished that his appearance as an expert witness in cases filed in this court could be jeopardized if he engages in similar conduct in the future. The court also believes a monetary sanction is appropriate in this case. The parties reached a settlement of the underlying case nearly one year ago in April 2013 (#50). The sole reason dismissal of this case has been delayed is the dispute over Dr. Carr's failure to comply with the confidentiality order and this satellite litigation that ensued. Otis's motion for order to show cause is granted, and Dr. Carr is ordered to pay the sum of $2,000 to Otis within thirty days of the date of this order. Thereafter, the parties to the underlying litigation shall submit a stipulation and order dismissing this case with prejudice within ten court days of Otis's receipt of the monetary sanction.

**III. Conclusion**

Based on the foregoing and for good cause appearing, the court orders as follows:

1.     Otis's motion for order to show cause (#52) is GRANTED.

2. Dr. Carr is sanctioned and shall pay to Otis the sum of $2,000 within thirty days of the date of this order.

3. The parties in the underlying case shall lodge with the Clerk of Court a stipulation and order dismissing this case with prejudice within ten court days of Otis's receipt of the monetary sanction from Dr. Carr.

**IT IS SO ORDERED.**

Dated: March 28, 2014.

_____
UNITED STATES MAGISTRATE JUDGE